# McGinn v. Connolly

*H. P. Abramson,* for plaintiff.

*Garfield & Levy,* for defendants.

FLOOD, J., August 16, 1955.—Plaintiff in this action seeks to recover the sum of $4,500, the price he paid defendants for a business, as well as other relief, on the ground that certain equipment, sold as part of the business, was fraudulently represented by defendants as being owned by one of them, when in fact it was and is owned by a third person.

The following appears from the pleadings:

Frieda Singer owned premises 3041 West Girard Avenue, Philadelphia, and most of the equipment and fixtures in a lunch room, pool room and bowling alley business which was located on the first floor and basement of the premises. By instrument dated May 26, 1949, Paul L. Shumacher, her agent, leased to defendants the first floor and basement of the premises, together with the fixtures and equipment of the lunchroom, poolroom and bowling alley. The term of the lease was one year from June 15, 1949. The rental was $1,350, payable in monthly installments of $100 for the first six months and $125 for the last six months. The lease provided for a deposit of $600 by defendants as security and prohibited subletting the premises without the written consent of the lessor.

On or before October 1, 1949, defendants desired to sublet the premises and equipment demised to them. The owner's agent refused to consent unless defendants agreed to purchase the entire property for $16,-000, execute a lease-purchase agreement covering the purchase, appoint him their agent to collect rents from the premises and pay him the usual five precent for collecting the rents. Defendants consented and shortly thereafter executed a lease-purchase agreement with Frieda Singer whereby they agreed to purchase "subject to existing leases and tenancies, if any", the ground and building at 3041 West Girard Avenue and

the fixtures and equipment contained therein and listed in the agreement.

The terms were $2,000 in cash, plus monthly payments of not less than $200 thereafter. The monthly payments were to be applied to the payment of six percent interest on the unpaid price. The balance remaining was to be applied to the purchase price. When $8,000 was paid on account of the price, the premises were to be conveyed to defendants, who agreed to pay the balance of the price at that time or to give the seller a purchase money mortgage for $8,000. Defendants agreed to make additional monthly payments covering taxes, water and sewer rents, insurance, etc. The agreement provided that any entry into possession by defendants should be as tenants of the seller and not as vendees in possession and the rental should be the same amount as provided above. Defendants agreed not to sublet any part of the premises without the written consent of the seller. They also agreed that any default in payment should be deemed a default in the payment of rent and should entitle the seller to rescind the agreement, obtain immediate possession and retain all payments.

On October 10, 1949, defendants represented to plaintiff that the equipment and fixtures being used in the business were owned by them. They offered to sell to plaintiff the business and this equipment and to lease to him the space occupied by the business. On October 10, 1949, plaintiff executed an agreement to purchase the business and all equipment "belonging to the business" for $4,500. The agreement provided for a lease to plaintiff of the store and basement for a monthly rental of $125. On or before settlement day, October 19, 1949, plaintiff paid to defendant, Connolly, the agreed price and defendants delivered to plaintiff a five-year lease covering the first floor and basement "to be used and occupied as Luncheon-

ette, Pool Room and Bowling Alleys only". The lease contained the following: "The equipment and bowling alleys in the basement are part of the demised premises." The parties to this lease were stated to be Paul L. Schumacher, agent, lessor and plaintiff, lessee. However, the lease was executed by the parties to this action and not by Mr. Schumacher.

Defendants rested without offering evidence and moved to dismiss the bill for the following reasons: (1) Plaintiff failed to sustained his burden of proof with respect to the allegations of fraud; (2) plaintiff is not entitled to relief in the absence of proof that his possession has been disturbed; and (3) plaintiff cannot elect to rescind and to recover damages as well but must elect a single remedy.

The principal issue is whether or not defendants knowingly made false representations of ownership in the sale of the business which plaintiff relied upon. If they did so the following questions arise: Is plaintiff entitled to relief without proof that his possession of such property has been disturbed or threatened? May plaintiff recover the entire purchase price or only damages?

### Findings of Fact

1. By lease dated May 29, 1949, Paul L. Shumacher, agent of Frieda Singer, the owner of premises 3041 West Girard Avenue, Philadelphia, leased to defendants the first floor and basement of the said premises, consisting of a lunchroom, poolroom and bowling alley, together with the fixtures and equipment located therein, also owned by Frieda Singer.

2. On or about October 10, 1949, Frieda Singer owned most of the equipment and fixtures being used in defendants' lunchroom, poolroom and bowling alley business.

3. On or about October 10, 1949, defendants with knowledge of Frieda Singer's title falsely represented

to plaintiff that defendant, Harry Gimble, owned all of the equipment and fixtures being used in defendants' business.

4. On or about October 19, 1949, plaintiff, relying upon these false representations of defendants, purchased from defendants the good will, stock, equipment and fixtures of the said business, paid defendants the agreed price of $4,500 and executed, as tenant, a five-year lease of the business premises.

5. The lease to plaintiff was executed by defendants as lessors, although the party named as lessor was Paul L. Shumacher, agent.

6. Defendants have never acquired title to most of the equipment and fixtures which they purported to sell to plaintiff.

7. The value of the equipment and fixtures used in the business which are owned by Frieda Singer and which defendants purported to sell to plaintiff is $2,906.20.

8. Sometime in the spring of 1951, plaintiff learned that Frieda Singer owned most of the equipment and fixtures used in the business which he had purchased from defendants.

9. After he discovered defendants' fraud plaintiff did not offer to return to defendants' possession the demised premises, equipment and fixtures, and stock, or its value, which, together with whatever good will was involved, he had acquired in the purchase of the business.

10. Plaintiff continued to operate the business and continued to pay rent to Paul L. Shumacher, as he had theretofore.

11. Frieda Singer orally authorized her agent, Paul L. Shumacher, to consent to defendant's subletting to plaintiff the space demised to them.

12. Paul L. Shumacher, pursuant to this authority, orally consented to defendants' subletting to plaintiff

the space demised to them. He retained a copy of plaintiff's lease and accepted rental from plaintiff.

13. The lease of the first floor and basement to plaintiff was part of a transaction between Frieda Singer and her agent, Paul L. Shumacher, on the one hand and defendants on the other, whereby defendants became obligated, by agreement dated October 25, 1949, to purchase the entire premises and fixtures and equipment contained therein.

14. The lease to plaintiff was a sublease from defendants and not a lease from the owner. Paul L. Shumacher, in accepting rental from plaintiff, was acting as agent for the collection of rents for defendants.

## Discussion

1. Defendants first contend that "clear, precise and indubitable" evidence is required to prove fraud and that plaintiff's evidence is not of that quality. In the lease to defendants, dated May 19, 1949, and in the lease-purchase agreement, dated October 25, 1949, defendants acknowledged Frieda Singer's title to the lunch counter, refrigerator and pool tables, for example. Paragraph two of defendants' answer admits her ownership of these items and paragraphs four and six of defendants' answer must be taken to admit that on or about October 10, 1949, both defendants represented to plaintiff that Harry Gimble was the owner of all of the restaurant equipment and machinery located on the first floor. At the trial plaintiff testified that defendant Gimble showed him the equipment in question and told him that all of it belonged to the business which he offered to sell to plaintiff. In the agreement with plaintiff, dated October 10, 1949, defendants agreed to sell, among other things, "all equipment and machinery on the premises at this time belonging to the business". Although the lease to plaintiff demised to him "the equipment and bowling alleys in the basement", the lease said nothing about

the lunch and poolroom equipment. The evidence that defendants purported to sell to plaintiff lunchroom and poolroom equipment owned by Frieda Singer and that they expressly represented that Harry Gimble owned this equipment, knowing their representations to be false, is "clear, precise and indubitable". Since the evidence of fraud was clear and compelling, defendants' first contention must be dismissed.

2. Defendants' second contention is that plaintiff is not entitled to relief unless and until his possession of the property in question is disturbed or threatened. Since the rights of the parties here were fixed prior to the effective date of the Commercial Code, The Sales Act is applicable.

The Sales Act provided for an implied warranty of title in addition to an implied warranty of quiet possession: 69 PS §122. However, despite the existence of two separate warranties in the act, there is authority which states that a buyer has no remedy by suit against the seller unless and until his possession has been disturbed. See Montgomery v. Michelson, 9 D. & C. 525, M. C., Philadelphia County, 1926; 1 Williston on Sales 426, §221 (2nd ed.). However, the action here is based upon fraud and not merely upon breach of warranty. The buyer's rights do not appear to be so limited in cases involving fraud. See Krumbhaar v. Birch, 83 Pa. 426 (1877), decided before the enactment of The Sales Act. However, the following peculiar circumstances present here would seem to establish a right to immediate relief. Here defendants acknowledged Frieda Singer's title in signed writings. She asserted her title and right to the goods in plaintiff's presence. Her title, which is clearly paramount, cannot be questioned by any of the parties hereto, all of them having acknowledged her title in this action. In paragraph two of their answer defendants alleged that with the knowledge and consent of Frieda Singer's

authorized agent defendants "offered to lease or sell and ultimately leased or sold . . . [equipment not owned by the defendants] . . . to plaintiff accompanied by a lease of the premises". There was no evidence to support this allegation. Properly construed against the pleader, it constitutes an admission that Frieda Singer consented only to a sublease and not to a sale of her equipment to plaintiff, and that defendants conveyed to plaintiff only what they had, a right to possession for a term. By using the equipment and paying rental plaintiff has in effect affirmed a lease to him of the equipment and now seeks relief because he has no title and no right to permanent possession.

We think plaintiff's damages are fixed and certain, not speculative, and that defendants, whose fraud has already sufficiently harmed plaintiff, should not be permitted to withhold the damages due plaintiff until the expiration of plaintiff's lease. Under the lease-purchase agreement defendants may some day obtain title. However, meanwhile they may default and lose all right to the goods.

There was here a loss of the right to permanent possession when plaintiff acquiesced to Frieda Singer's claim of paramount title and when he relinquished all claim except as lessee. Such loss, when clearly established, is as meaningful as an involuntary loss of actual possession, which is ordinarily required in actions for breach of warranties where no lease is involved.

3. Defendants' final objection, that plaintiff seeks both recission and damages, was a ground for preliminary objections filed to the amended complaint. These objections were withdrawn by defendants without prejudice in order to proceed to a hearing on the merits. Although plaintiff seeks to recover the entire purchase price he has not fulfilled the prerequisite, that he tender to defendants the good will,

stock, or its value, equipment and lease which he obtained in this transaction. Plaintiff may not rescind part of the sale and affirm the rest. We conclude that he has forfeited his right to recission by numerous acts affirming the sale after knowledge of its breach but that he is entitled to damages.

### Conclusions of Law

1. Defendants represented to plaintiff that defendant, Harry Gimble, owned all the fixtures and equipment in the lunch and poolroom of a business being operated by defendants under lease from Frieda Singer at 3041 West Girard Avenue, Philadelphia.

2. Most of the equipment and fixtures so represented were actually owned by a third person, Frieda Singer.

3. Defendants knew that their representations of ownership were false.

4. In reliance upon the false representations of defendants plaintiff purchased this business from defendants, including the fixtures and equipment then being used therein and a lease of the business premises.

5. Upon discovering that Frieda Singer owned most of the equipment and fixtures purchased from defendants, and that she asserted title thereto, plaintiff elected to affirm the sale and lease to him, thereby forfeiting his right to rescind the sale.

6. Plaintiff is entitled to recover from defendants as damages an amount equal to the value of the equipment and fixtures used in the business which were not owned by defendants but were and are owned by Frieda Singer.

7. The value of such equipment and fixtures is $2,906.20.

### Decree Nisi

And now, August 16, 1955, it is ordered, adjudged and decreed that defendants, M. J. Connolly and Harry Gimble, pay to plaintiff the sum of $2,906.20.